IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ALVIN BERNAL JACKSON                                                    PETITIONER

No. 5:03-CV-00405 SWW

LARRY NORRIS, Director,
Arkansas Department of Correction,                                     RESPONDENT

## **ORDER**

Petitioner Alvin Bernal Jackson ("Jackson"), sentenced to death for murder and confined

at the Maximum Security Unit of the Arkansas Department of Correction, seeks a writ of habeas

corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").   Jackson asserts that his death sentence is in violation of

several provisions of the United States Constitution.   After careful consideration of the record,

and for the reasons that follow, Jackson's petition will be dismissed with prejudice.

I.

In 1990 Jackson was convicted of capital murder and two attempts to commit capital

murder and sentenced to life without parole plus 105 years.   R. 1316-17.   On November 29,

1995, while serving out his life sentence at the Arkansas Department of Correction, Jackson

stabbed prison guard Scott Grimes to death with a homemade knife.   On June 20, 1996,

following an four-day trial in the Circuit Court of Jefferson County, a jury convicted Jackson of

capital murder for killing Scott Grimes and sentenced him to death.

The Arkansas Supreme Court affirmed Jackson's 1996 conviction and death sentence on

1

direct appeal.  *See Jackson v. State,* 330 Ark. 126 (1997).   Jackson filed a petition for post-

conviction relief pursuant to Ark. R. Crim. P. 37, asserting the following claims:

1.      There was "improper incursion" into the verdict by the trial court in an attempt to cure an obvious penalty phase error, and petitioner's counsel was ineffective for failing to object.

2.      Petitioner's counsel was ineffective for failing to present an adequate penalty phase defense.

3.      Petitioner's counsel was ineffective for failing to seek further examination of Petitioner to determine whether there was an organic basis for his mental condition.

4.      Petitioner's counsel was ineffective for failing to object to a misstatement of law by the prosecuting attorney.

5.      Petitioner's counsel was ineffective for failing to challenge the constitutionality of the Arkansas victim impact statute.

6.      Petitioner's counsel was ineffective for failing to elicit testimony about the pre-existing disrepair of Petitioner's cell door.

R. 29-54.

Initially, the trial court denied Jackson's petition as untimely, but the Arkansas Supreme

Court reversed and remanded.  *See Jackson v. State,* 343 Ark. 613 (2001).   On remand, the trial

court determined that no hearing was warranted, and it issued written findings rejecting each

ground for relief asserted by Jackson.  R. 417.   Jackson appealed, and the Arkansas Supreme

Court affirmed.  *See Jackson v. State*, 352 Ark. 359 (2003).

On October 27, 2003, Jackson filed his petition for habeas corpus relief in this Court,

asserting the following grounds for relief: (1) Jackson's Sixth, Eighth, and Fourteenth

Amendment Rights were violated by the trial court's improper incursion into the jury's role in a

misguided attempt to cure penalty phase error; (2) trial counsel was ineffective by failing to

object to the trial court's instructions to the jury; (3) trial counsel was ineffective by failing to

2

present an adequate penalty phase defense; (4) trial counsel was ineffective by failing to seek

further examination of Jackson to determine the existence of an organic basis for his mental

condition; (5) trial counsel was ineffective by failing to object to the prosecution's misstatement

of law; (6) trial counsel was ineffective by failing to object to victim impact evidence and by

failing to argue that the Arkansas victim impact statute is unconstitutional; and (7) Jackson is

mentally retarded; thus ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304

(2002).

II.

Under the AEDPA amendments to 28 U.S.C. § 2254, a state prisoner may obtain federal

habeas relief with respect to a claim that has been adjudicated on the merits in state court only

when the state decision was (1) contrary to or involved an unreasonable application of clearly

established Supreme Court precedent or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  *See* 28 U.S.C. § 2254(d).

A state court's decision is  "'contrary to' clearly established federal law if the state court

has applied a rule that directly contradicts Supreme Court precedent or has reached a result

opposite to a result reached by the Supreme Court on 'materially indistinguishable' facts."

*Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362,

405(2000)(concurring opinion of O'Connor, J., for the Court)).  A state court's decision will be

viewed as an "unreasonable application" of clearly established federal law "if the state court

identifies the correct governing legal principle from [the Supreme Court's] decisions but

unreasonably applies that principle to the facts of the [petitioner's] case."  *Williams v. Taylor*,

529 U.S. 362, 413 (2000)(concurring opinion of O'Connor, J., for the Court).

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was *objectively* unreasonable." *Williams,* 529 U.S. at 409 (emphasis supplied). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. Thus, a state court's application of federal law might be erroneous, yet not objectively unreasonable. *Kinder*, 272 F.3d at 538.

III.

Jackson's first asserted ground for relief is that his constitutional rights were violated in the penalty phase of his criminal trial by the trial court's "improper handling of error in the completion of the penalty phase verdict form." The pertinent facts regarding this claim follow.[1]

Arkansas law provides that a jury shall impose a sentence of death if it unanimously returns written findings that: (1) aggravating circumstances exist beyond a reasonable doubt; (2) aggravating circumstances outweigh beyond a reasonable doubt all mitigating circumstances found to exist; and (3) aggravating circumstances justify a sentence of death beyond a reasonable doubt. *See* Ark. Code Ann. 5-4-603(a). The Arkansas model jury instructions for the sentencing phase of a capital murder case include four separate verdict forms: Form 1, the jury's findings concerning possible aggravating circumstances; Form 2, the jury's findings concerning possible mitigating circumstances; Form 3, the jury's weighing of any aggravating or mitigating circumstances; and Form 4, the jury's sentence of death or life without the

---

[1]The Court takes the facts as reported by the Arkansas Supreme Court and from the record. *See Jackson v. State*, 105 S.W.3d 352 (Ark. 2003). Jackson has not challenged these facts.

possibility of parole.  *See* AMI Crim.2d 1008.

Pursuant to the model instructions, Form 2 submitted to the jury in Jackson's case contains four paragraphs:  A, B, C, and D.  *See* Supp. R. (Resp't Ex. 3-A).  Paragraph A provides a checkmark space beside the statement: "We unanimously find that the following mitigating circumstances probably existed at the time of the murder:"  Below this statement are checkmark spaces beside three specific mitigating circumstances, which were proffered by the defense, and blank lines for the jury to specify in writing any other mitigating circumstances.  The specific mitigating circumstances listed on the form are as follows:

- The capital murder was committed while Alvin Jackson was under extreme or mental or emotional disturbance.

- The capital murder was committed while the capacity of Alvin Jackson to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was impaired as a result of mental disease.

- Alvin Jackson had a history of mental retardation.[2]

Paragraph B provides a checkmark space beside the statement:  "One or more members

---

[2]Jackson did not argue that he was ineligible for the death penalty by reason of mental retardation.  However, during the penalty phase, Jackson's counsel introduced records, dating from 1978 to 1996, documenting Jackson's long history of behavioral problems.  R. 981-983, 988.  Those records include the results of an IQ test administered in 1977, when Jackson was six years old, showing a verbal IQ of 60, a performance IQ of 90, and a full scale IQ of 73.  R. 1332. The 1977 report states that Jackson's overall level of intellectual functioning was within the borderline mentally retarded range.  The records submitted to the jury also include a 1996 forensic evaluation report, which states that Jackson has an IQ of 92, has at least low average intelligence, and is not mentally retarded.  R. 1387.

In closing remarks, defense counsel argued: "Of the enumerated mitigating circumstances and these are just the ones the statutes suggest. . . . If you will look at the very first two sections of this report from when Alvin Jackson was six years old and you will find . . . references to him being - - having a history of mental retardation."  R. 1016.  The prosecution, in its closing remarks, pointed to Jackson's most recent IQ score (92) and argued that at the time of the murder, he had average intelligence.  R. 1006.

of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree:"   Below this statement are the same proffered specific mitigating circumstances set forth in Paragraph A and blank lines for other mitigating circumstances.

Paragraph C provides a checkmark space beside the statement: "There was evidence of the following circumstances, but the jury unanimously agreed that they were not mitigating circumstances."  Paragraph C then lists the specific mitigating circumstances set forth in Paragraphs A and B and provides checkmark spaces beside each.

Paragraph D provides a checkmark space beside the following statement:

No evidence of a mitigating circumstance was presented by either party during any portion of the trial.  (Check only if no evidence was presented.  If evidence was presented but the jury agreed that it was not mitigating, check [paragraph C]).

The trial court read Forms 1 through 4 aloud to the jury.  R.  997-1002.  Additionally, after reading Paragraph D of Form 2, the judge instructed:  "Because in this case there was [mitigating] evidence presented by both sides you should ignore this section."  R. 1001.

After receiving the court's instructions, the jury heard closing remarks and retired to the jury room for deliberations.  Fifteen minutes later, the jury returned to the courtroom with a verdict.  The judge reviewed the verdict forms and determined that the jury had, contrary to his instruction, checked Paragraph D of Form 2, indicating that there had been no evidence of mitigating circumstances presented.  The judge then addressed the jury as follows:

Ms. Rideau, on the–on Form 2, you have checked paragraph (d) and signed this.  I was, perhaps, unclear in my instructions to you.  Paragraph (d) says that no evidence of mitigating circumstances was presented by either party during any portion of the trial. . . . It was to be checked only if no evidence.  Certainly, some evidence was presented.  And it goes on to say, if evidence was presented but the jury agreed that it was not mitigating, check section (c).  I'm going to ask you if you will, please, for [you all] to retire to the jury room and complete Form 2 in accordance with the instructions contained on that if you would please.  I'm going to send you back with

6

all of the forms that you just returned.  And if you would, please, make that correction.  I'll just tell you as a matter of law Form 2, section (d) should not be checked because there was, in fact, evidence submitted as to mitigating circumstance.  Would the jury retire then to the jury room for the correction of Form 2, please?

R. 1023-24.    Jackson's counsel made no objection to the trial court's instruction that Paragraph D could not be checked because evidence of mitigating circumstances had been presented; nor did counsel object to the court's instruction to retire to the jury room and complete Form 2 "in accordance with the instructions."

The jury retired to the courtroom, and returned with a final verdict with a checkmark beside Form 2, Paragraph C, which, reads: "There was evidence of the following circumstances, but the jury unanimously agreed that they were not mitigating circumstances."    Supp. R. (Resp't Ex. 3-A).  The jury made no checkmarks beside the specific mitigating circumstances listed under Paragraph C.  However, as previously stated, Paragraph D instructs that "if evidence was presented but the jury agreed that it was not mitigating, check section [Paragraph] C."

After the trial judge read the corrected verdict forms, the following dialogue occurred:

Court: Form 2 is executed paragraph (c).  There was evidence of the following circumstances but the jury unanimously agreed that they were not mitigating circumstances.  There are none checked.  But there is a signature line on the fourth page by you Ms. Rideau.  Is that the unanimous finding of the jury?

Foreperson Rideau: Yes, sir.

R. 1026.  Form 3, as completed by the jury, states the jury's unanimous findings as follows: (1) one or more aggravating circumstances did exist beyond a reasonable doubt, at the time of the commission of capital murder, (2) the aggravating circumstances outweigh beyond a reasonable doubt any mitigating circumstances found by any juror, and (3) the aggravating circumstances justify beyond a reasonable doubt a sentence of death.  Supp. R. (Resp't Ex. 3-A)

7

On appeal from the trial court's denial of post-conviction relief, Jackson argued, as he does in this habeas action, that the trial court's instruction to the jury violated his Sixth Amendment right to a properly instructed and impartial jury, his Eighth Amendment right to have the jury consider all mitigating evidence, and his Fourteenth Amendment rights of due process and equal protection.

The Arkansas Supreme Court rejected Jackson's claims, finding that (1) any confusion concerning Form 2 did not show that the jury failed to properly consider mitigating circumstances; (2) the jury correctly filled out Form 3, which set out the statutory requirements for weighing aggravating and mitigating circumstances; and (3) the trial court properly instructed the jury to go back into the jury room and correct an error made in completing Form 2.  *See Jackson v. Arkansas*, 105 S.W.3d 352, 358-59 (Ark. 2003).

Jackson contends that the Arkansas Supreme Court's adjudication of his Sixth, Eighth, and Fourteenth Amendment claims regarding the trial court's handling of penalty phase instructions resulted in a decision that is contrary to or involves an unreasonable application of federal law, as determined by the Supreme Court.  To support this contention, Jackson cites *Sullivan v. Louisiana*, 113 S. Ct. 2078 (1993); *Sparf v. U.S.,* 15 S. Ct. 273 (1895); *U.S. v. Martin Linen Supply Co.*, 97 S. Ct. 1349 (1977); and *Carpenters & Joiners of America v. U.S.,* 67 S. Ct. 775 (1947).

In *Sullivan* and *Sparf*, the Supreme Court explained that the Sixth Amendment right to a jury trial "includes . . . as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'" *Sullivan*, 113 S. Ct. at 2080 (citing *Sparf v. United States,* 15 S. Ct. at 294-295 (1895)).  In both cases, the Court noted that "although a judge may

direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence." *Id.* Similarly, in *U.S. v. Martin Linen Supply Co.*, 97 S. Ct. 1349 (1977), the Court stated that a trial judge is barred from attempting to override or interfere with the juror's independent judgment in a manner contrary to the interests of the accused, *see id.*, at 1356, and in *Carpenters & Joiners of America v. U.S.,* 67 S. Ct. 775 (1947), the Court reiterated that a court cannot, no matter how clear the defendant's culpability, direct a guilty verdict. *Id.*, at 782-83.

The trial court in this case ruled that the jury could not, consistent with the law and the evidence, find that no evidence of mitigating circumstances had been presented, and left it to the jury to decide whether such evidence established the existence of mitigating circumstances. The trial court's handling of the jury's error in the initial verdict form in no way abridged Jackson's right to an impartial, properly instructed jury. In fact, the court's ruling promoted, rather than obstructed, the jury's consideration of mitigating evidence. *See Martin Linen Supply Co.*, 97 S. Ct. at 1356 (stating that the prohibition against a directed verdicts in criminal trials "has never inhibited [a] ruling in favor of a criminal defendant.").

Jackson also argues that the Arkansas Supreme Court's decision affirming denial of post-conviction relief is contrary to or an unreasonable application of *Penry v. Lynaugh.* 109 S. Ct. 2934 (1989).[3]  In *Penry,* the defendant offered mitigating evidence of mental retardation and an

---

[3]Jackson also cites *Eddings v. Oklahoma,* 102 S. Ct. 869 (1982) and *Locket v. Ohio*, 98 S. Ct. 2954 (1978).  In *Locket,* the Supreme Court held unconstitutional an Ohio death penalty statute which mandated the death penalty upon a finding of aggravating circumstances unless one of three statutory mitigating circumstances were present.  The Court held that the statute failed to  permit the type of individualized consideration of mitigating factors required by the Eighth and Fourteenth Amendments.  *See Locket*, 98 S. Ct. at 2965.  In *Eddings*, the Court reaffirmed that "a sentencer may not be precluded from considering, and may not refuse to consider, any relevant mitigating evidence offered by the defendant as the basis for a sentence

abused childhood, but the trial court refused to instruct the jury that it could consider that evidence as mitigating evidence. The Supreme Court held that in order to comply with the Eighth and Fourteenth Amendments and to ensure reliability in the determination that death is the appropriate punishment in a specific case, a jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense. *See Penry*, 109 S. Ct. at 2951-52.

In sharp contrast to the situation in *Penry*, the trial court's instructions in this case *required* the jury to consider mitigating evidence. In addition to the court's instructions regarding the specific content of Form 2 and his ruling that, as a matter of law, mitigating evidence had been presented by both sides, he instructed the jury as follows:

> Form 2 lists some factors that you may consider as mitigating circumstances. However, you are not limited to that list. You may, in your discretion, find other mitigating circumstances. Now unlike an aggravating circumstance you are not required to be convinced of the existence of a mitigating circumstance beyond a reasonable doubt. A mitigating circumstance is shown if you believe from the evidence that it probably existed.

The Court finds that the state court's determination that the trial court adequately instructed the jury to take into account mitigating evidence and properly instructed the jury regarding the initial error in completing Form 2 is completely consistent with the Supreme Court's decision in *Penry*.

Next, Jackson claims that the Arkansas Supreme Court's decision finding no error in the trial court's handling of the penalty phase instructions violated his right to due process and equal protection because "it failed to reverse when similarly situated defendants had been." Jackson asserts that the decision is contrary to, or an unreasonable application of *Hicks v. Oklahoma*, 100

---

less then death." *Penry v. Lynaugh*, 109 S. Ct. 2934, 2946 (1989)(discussing *Eddings*).

S. Ct. 2227 (1980), which, he claims, provides that a state must follow its own laws and not treat similarly situated persons inconsistently.

In *Hicks,* a jury sentenced the defendant, Flynn Noye Hicks, to a mandatory term of 40 years imprisonment, pursuant to an Oklahoma habitual-offender statute.   Hicks appealed, and while his appeal was pending, the Oklahoma Court of Criminal Appeals declared the habitual-offender statute unconstitutional.  In spite of its ruling invalidating the sentencing statute, the state appellate court affirmed Hicks' sentence, reasoning that it was within the range of punishment that could have been imposed in any event.  United States Supreme Court reversed, finding that if Hicks' jury had been correctly instructed, there was a substantial possibility he would have received a sentence of less than 40 years.  The Supreme Court held that Hicks had been denied a jury sentence, a right provided under Oklahoma law, in violation of his right to due process.

Generally, it is not the job of a federal habeas court to reexamine state-court determinations on state-law questions.   *Hicks* "represents a rather narrow rule: some aspects of the sentencing process, created by state law, are so fundamental that the state must adhere to them in order to impose a valid sentence." *Carter v. Bowersox,* 265 F.3d 705, 715 (8th Cir. 2001)(quoting *Chambers v. Bowersox,* 157 F.3d 560, 565 (8th Cir. 1998)).   According to Jackson, by affirming the trial court, the Arkansas Supreme Court countenanced violations of state law in order to sustain his death sentence and failed to adhere to state law in accordance with *Camargo v. State,* 327 Ark. 631, 940 S.W.2d 464 (1997); *Willett v. State,* 322 Ark. 613, 911 S.W.2d 937 (1995); and *Giles v. State,* 261 Ark. 413, 549 S.W.2d 479 (1977).

In *Camargo,* the Arkansas Supreme Court reversed a death sentence based on the jury's

failure to comply with a requirement of Ark. Code Ann. § 5-4-603–that the jury return unanimous written findings that the aggravating circumstances justify beyond a reasonable doubt a sentence of death.   *Camargo*, 327 Ark. at 644-45, 940 S.W. 2d at 470-71. Here, on verdict Form 3, the jury returned a written, unanimous finding that the aggravating circumstances justify beyond a reasonable doubt a sentence of death.

In *Willett*, the Arkansas Supreme Court reversed a sentence of death based on a verdict form deficiency that made it impossible to discern whether the jury found any mitigating circumstances.  *Willett*, 322 Ark. at 628, 911 S.W. 2d at 945.  Here, the verdict form clearly shows that the jury found no mitigating circumstances.

Finally, in *Giles*, the Arkansas Supreme Court reversed a death sentence because the jury failed to find any mitigating circumstances despite the fact that the record was "replete with evidence" that the defendant  suffered imbecility and organic brain disorder at the time the crime was committed.   *Giles*, 261 Ark. at 424, 549 S.W. 2d at 485.  Here, Jackson does seek habeas relief on the ground that the jury failed to find mitigating circumstances.  Instead, he claims that the trial court's instructions to the jury effectively directed a verdict of no mitigating circumstances.  *See* docket entry #1, at 9.

The Court finds that Jackson has failed to show that, in upholding the trial court's handling of the penalty phase, the Arkansas Supreme Court failed to adhere to a due process interest created by state law.  Further, the Court finds that the Arkansas Supreme Court's decision upholding the trial court's handling of the penalty phase was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court.

Jackson makes the additional argument that the Arkansas Supreme Court's decision was

based on an unreasonable determination of the facts because the court "mischaracterized" his claim for relief.  Jackson argues that the Arkansas Supreme Court held that the trial court did not direct the jury to impose the death penalty, when his argument was "that the trial court had directed a verdict of no mitigating circumstances, which was tantamount to a death verdict and one which had the facade of correctness."   The Court finds that the relevant facts regarding events that took place in the penalty phase are undisputed, and the Arkansas Supreme Court accurately identified the substance of Jackson's claims.  Jackson's argument is no more than a comment on semantics, and it merits no further discussion.

In sum, the Court finds that Jackson has failed to meet the  AEDPA standard for habeas relief with respect to his claim that the trial court's handling of the jury's initial error in completing Form 2  violated his rights under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.

Next, Jackson raises five instances of ineffective assistance of counsel.  First, he argues that his counsel was ineffective for failing to object to the trial court's handling of the jury's error in completing verdict Form 2.  To prevail on an ineffective assistance of counsel claim, Jackson must demonstrate that his counsel's performance was deficient, that is, that counsel failed to exercise the customary skills and diligence of a reasonable attorney in similar situations, and that the deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, Jackson must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694.  "Judicial scrutiny of counsel's performance must be highly deferential . . . [and the court] must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Id.* at 689.

Here, even assuming that Jackson can show deficient performance in the failure to object to the trial court's handling of the jury's error, he cannot show prejudice. For reasons previously stated, the trial court made no error in instructing the jury during the penalty phase, thus the failure to object to the error-free instructions had no effect on the jury's imposition of the death penalty.

Second, Jackson claims that his trial counsel was ineffective by failing to present an adequate penalty phase defense. During the penalty phase, Jackson's attorney attempted to show the existence of mitigating circumstances with the testimony of Jackson's twin brother, Calvin Jackson, who testified that his brother had life-long behavioral problems. He testified that his brother's behavior improved with medication, but when his mother could no longer afford to buy medicine, "things would happen." R. 990-91. Calvin Jackson also testified that although he had grown up in the same environment as his brother, he had never been incarcerated and had a successful career in restaurant management. R. 992-93. During direct examination of Calvin Jackson, Jackson's attorney referred to records, which were received into evidence, that documented Jackson's life-long history of behavioral problems, antisocial personality disorder, and extreme attention deficit. R. 1323-1399.

In closing argument, Jackson's counsel argued:

I'm hoping that you will look at this and ask yourself when you look at his twin bother who has gone this way and then you look at Alvin Jackson and say, "He's gone the other way," ask yourself why. Well, I think it's pretty obvious that it was discovered early on he had problems. Those same problems that didn't saddle his brother who comes from the same set of parents, who grew up in the same household . . . . Ask yourself why. You will see, when you look at these records, that he has problems."

14

R. 1010.

Jackson argues that his trial counsel "did a mere cursory deposit to the jury of some records with no attempt to explain them with expert testimony, rendering them essentially meaningless."   In an attempt to show prejudice, Jackson compares his attorney's penalty phase performance with the penalty phase defense he received in his 1990 murder trial.[4]  Jackson's attorney in 1990 proceedings, Di Di Sallings, presented the testimony of a neurologist who stated that Jackson suffered from attention deficit disorder ("ADD").  Sallings also called a psychiatrist, who testified that ADD is a life-long mental disorder that can cause antisocial behavior.

The Arkansas Supreme Court found no error in counsel's failure to use the same penalty-phase defense strategy employed in Jackson's first murder trial.  In its opinion affirming the trial court, the Arkansas Supreme Court stated:

> Even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment.  Furthermore, in light of the totality of evidence presented, counsel's performance during the penalty phase was not deficient, and Mr. Jackson's contention that trial counsel should have used the same strategy in his second murder trial as that used in his first murder trial fails. Mr. Jackson, already serving a life sentence for the first murder, planned and committed another murder. The jury was made aware that this was Mr. Jackson's second murder charge and to contend that the strategy during the penalty phase should be the same for two substantially different murders must fail. Accordingly, on this point, we affirm the denial of Rule 37 relief.

*Jackson v. State,* 105 S.W.3d 352, 360 (2003)(internal citation omitted).

The Court finds the Arkansas Supreme Court's reasoning completely consistent with the *Strickland* standard for evaluating ineffective assistance of counsel claims.  As a basic principle,

---

[4]A transcript of the 1990 penalty phase proceedings was presented to the trial court and the Arkansas Supreme Court in support of Jackson's petition for post-conviction relief.  *See* Resp't Ex. 3-B through 3-C.

under *Strickland*, the presentation of testimonial evidence is a matter of trial strategy.  Additionally, considering the evidence in aggravation in the 1996 proceedings against any benefit that might have been gained by from expert testimony,  Jackson cannot show prejudice.  In 1990, the possibility that Jackson would receive a death sentence was based on evidence of a single aggravating circumstance specified under Arkansas law: that Jackson had committed murder for pecuniary gain. R. 351, 354. Evidence presented to the jury in 1990 showed that Jackson had no prior violent felony convictions, he was nineteen years old, and he had an accomplice who actually caused the death of the murder victim.  In contrast, the jury in Jackson's second murder trial received evidence regarding two aggravating circumstances: that Jackson was imprisoned as a result of a felony conviction at the time he murdered Scott Grimes, and that Jackson had previously committed another felony that included the use or threat of violence to another person.

Third, Jackson claims that his trial counsel was ineffective in failing to seek further examination to determine whether there was a physical or organic basis for his behavior.  In his petition for post-conviction relief, Jackson argued that "advances in magnetic resonance imaging (MRI), computerized tomography (CT) and positron emission tomography (PET) have made it possible to determine whether the brain is physically abnormal or functionally abnormal."  He argued that his trial counsel should have requested MRI, CT, and PET testing, and he filed a separate motion, in conjunction with his petition for post-conviction relief, requesting that such testing be performed.  In his motion for post-conviction relief, Jackson stated: "When the motion for the testing is granted and the organic defects are shown on the tests, Jackson will have demonstrated prejudice." R. 45.

Jackson's trial counsel requested that Jackson be committed to the Arkansas State

Hospital ("ASH") for detailed examination by the Director of the ASH and a written evaluation

to include: (1) a description of the nature of the examination; (2) a diagnosis of Jackson's mental

condition; (3) an opinion as to Jackson's capacity to understand the proceedings against him and

to assist effectively in his own defense; (4) an opinion as to the extent, if any, to which the

capacity of Jackson to appreciate the criminality of his conduct or to conform his conduct to the

requirements of law  was impaired at the time of the alleged conduct; and (5) an opinion as to the

capacity of Jackson to have the culpable mental state required to establish an element of the

offense charged.   R. 19-21.

The trial court granted the motion, and ordered a detailed examination and written

evaluation as requested by defense counsel.  R. 25.  Based on a psychological assessment

performed by a psychologist and a review of Jackson's records, a forensic evaluation team

concluded that Jackson had a long history of antisocial behavior; he had no signs of an Axis I

mental disorder; and he possessed the mental capacity to appreciate the criminality of his alleged

conduct.  R. 27-28.

The Arkansas Supreme Court rejected Jackson's argument that his trial counsel was

ineffective in failing to seek further evaluation, stating as follows:

> Mr. Jackson makes only conclusory statements concerning whether further
> examination might have led to the determination that an organic cause of mental
> illness was present.  Mr. Jackson explains that if CT, PET, or MRI tests had been
> performed, the tests might have resulted in some showing of an organic cause of
> some mental illness. . . . We will not grant post conviction relief for ineffective
> assistance of counsel where the petitioner fails to show what the omitted testimony
> or other evidence was and how it would have changed the outcome.

*Jackson v. State,* 105 S.W.3d 352, 360 (Ark.,2003).

The state court's decision is not contrary to or an unreasonable application of clearly

established Supreme Court precedent.  The record shows that Jackson's trial counsel made a

17

reasonable investigation into Jackson's mental condition by requesting a detailed evaluation. Given the results of the evaluation, counsel had no basis to request CT, PET, and MRI tests, and his investigation was certainly within the range of competent representation.    Furthermore, Jackson has failed to demonstrate prejudice as he made no showing that tests would have revealed mitigating evidence.  *See Walls v. Bowersox,* 151 F.3d 827, 835 (8th Cir. 1998)("The strongest statement Walls can muster in support of prejudice is the psychologist's testimony that it is "conceivable" that Walls suffers from some organic brain dysfunction. This speculation does nothing to undermine our confidence in the outcome of Walls's trial.").

Fourth, Jackson asserts that his trial counsel was ineffective by failing to object to a "misstatement of law" by the prosecution in closing arguments.  The alleged misstatement of law came in the following delivery:

> The second mitigating circumstance they have asked you to find is that the capital murder was committed while the capacity of Alvin Jackson to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law were impaired as a result of mental disease.  The defense, in fact, has offered you a series of records . . . . In one of their own records . . . Dr. Michael Simon . . . says that Mr. Jackson, he's talking about this case and he's talking about the murder of Scott Grimes, was able to appreciate the criminality of his conduct and conform his conduct to the requirements of the law at the time of the alleged crime.  That's the psychological examiner's opinion.  That mitigating circumstances wouldn't apply.

R. 1004.

Arkansas Code § 5-4-605(3) provides that a mitigating circumstance exists when "capital murder was committed while the capacity of the defendant to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of law was impaired as a result of mental disease or defect . . . . " Ark. Code Ann. § 5-4-605(3).  Jackson argues that § 5-4-605(3) provides for a mitigating circumstance if the defendant's capacity is impaired,  but the

prosecution's remarks implied that the statute requires an "inability" to appreciate the wrongfulness of conduct or to conform conduct to the law. Jackson argues, "A person who is impaired may still be able to do something, just not as well." Docket entry #1, at 26.

The Arkansas Supreme Court found that the prosecution did not misstate the law, and it was not error for Jackson's attorney to fail to object. Even assuming that Jackson could show deficient performance for failing to object, he cannot satisfy the *Strickland* prejudice requirement. The prosecution introduced its argument by reciting the exact language of § 5-4-605(3). Form 2 of the verdict form, which the trial court read aloud to the jury, also contained the exact language provided under § 5-4-605(3). R. 999-1001. Furthermore, the trial court instructed the jury that it was not limited to the mitigating circumstances set forth in Form 2 and had discretion to find from the evidence that other mitigating circumstances probably existed. R. 999.

Fifth, Jackson claims that Arkansas Code Annotated § 5-4-602(4), the Arkansas victim impact statute which permits the presentation of victim impact evidence in the penalty phase of a capital murder trial, is unconstitutional. He also argues that his trial counsel was ineffective for failing to challenge the statute at the trial court level.

Victim impact evidence was admitted in the penalty phase of Jackson's state proceedings; specifically, the testimony of Scott Grimes' mother and his widow. R. 976-979. On direct appeal, Jackson argued that the victim impact statute created a new aggravating circumstance in violation of the Due Process Clause. The Arkansas Supreme Court declined to consider this argument on the ground that Jackson had not presented it to the trial court. *See Jackson v. State,* 330 Ark. 126, 131 (1997).

In his petition for post-conviction relief, Jackson argued that his trial counsel was ineffective for failing to challenge victim impact statute.  He further argued that the statute is void for vagueness and violates the Due Process Clause because if fails to define "victim impact" and fails to give sufficient guidance as to how a jury may properly consider victim impact evidence.  He also argued that the presentation of victim impact evidence constitutes a departure from Arkansas' statutory sentencing scheme in which aggravating and mitigating factors are weighed.  According to Jackson, permitting a jury to consider matters other than the enumerated aggravating factors specified in Arkansas Code Annotated § 5-4-604 violates the Due Process Clause and the Eighth Amendment.

In its opinion affirming the trial court's denial of post-conviction relief, the Arkansas Supreme Court stated that even if Jackson's challenge to the victim impact statute had been preserved, his arguments have no merit.  The Arkansas Supreme Court noted that it had "rejected claims of error because of a failure to object to victim-impact evidence several times."  *Jackson v. State,*  105 S.W.3d 352, 361 (Ark. 2003)(citing *Kemp v. State,* 919 S.W.2d 943, *cert. denied,*117 S. Ct. 436 (1996)); *Nooner v. State,* 907 S.W.2d 677 (1995), *cert. denied,* 116 S. Ct. 1436 (1996)).    The court also noted that in *Payne v. Tennessee*, 111 S. Ct. 2597 (1991), the United States Supreme Court held that victim-impact evidence is permissible.  *Id*.

In his petition for habeas relief, Jackson states that he "conceded in state court that the issue of ineffective assistance of counsel for failure to argue victim impact evidence will not prevail under the current state of the law."  Docket entry #1, at 27.  However, he reasserts his claim here "in anticipation that the courts will eventually determine that his position is correct and that any such decision will be given retroactivity as being fundamental."  *Id*.

20

Despite the Arkansas Supreme Court's statement that it would not consider Jackson's challenge to the victim impact statute, the court nonetheless stated that Jackson's arguments attacking the statute were without merit.  Accordingly, the Court finds it proper to reach the merits of this claim, and also finds that the Arkansas Supreme Court's rejection of Jackson's arguments comports with Supreme Court precedent.

The United States Supreme Court has held that the Constitution does not require a state to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer, *see Harris v. Alabama,* 513 U.S. 504, 512 (1995), and the Eighth Circuit has rejected the argument that the Arkansas victim impact statute is void for vagueness, violates the Eighth Amendment, and otherwise offends due process.  *See Nooner v. Norris,* 402 F.3d 801, 807 -808 (8th Cir. 2005), *cert denied*, 126 S. Ct. 2037 (2006).

Furthermore, facial vagueness challenges to statutes that do not implicate First Amendment rights must be evaluated on the particular facts of the case, *see Nooner v. Norris,* 402 F.3d 801, 807 (8th Cir.2005), and Jackson has failed to show how the victim impact testimony in his case prejudiced him or violated his constitutional rights.  Finally, the Court finds that Jackson suffered no prejudice as a result of his trial counsel's failure to challenge the constitutionality of the victim impact statement, thus the state court properly denied relief on his ineffective assistance of counsel claim.

Jackson's final claim for relief is that he is mentally retarded and, therefore, ineligible for the death penalty.  In  *Atkins v. Virginia,* 536 U.S. 304, 321 (2002), the Supreme Court held that the Eighth Amendment prohibits the execution of the mentally retarded.   The "new rule" announced in *Atkins*, placing a substantive restriction on the State's power to take the life of a

mentally retarded offender, is retroactive and applicable to defendants on collateral review. *See Penry v. Lynaugh,* 109 S. Ct. 2934, 2953 (1989) (stating that a rule, pursuant to the Eighth Amendment, prohibiting the execution of the mentally retarded would apply retroactively to defendants on collateral review). *Atkins* was decided June 20, 2002, when Jackson's appeal from the trial court's denial post-conviction relief was still pending.

Although Jackson presented evidence in mitigation during the sentencing phase of his trial showing that he had behavioral problems, ADD, antisocial personality disorder, and low to average intelligence, it is undisputed that in none of the state court proceedings did he argue that he was ineligible for the death penalty due to mental retardation. Jackson's failure to raise the claim in state court implicates the requirements of exhaustion of state remedies and procedural default.

Title 28 U.S.C. § 2254(b)(1)(A) bars federal habeas relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." The exhaustion requirement applies only to state remedies still available at the time of the federal petition; thus, the exhaustion requirement is satisfied if it is clear that the petitioner's claims are procedurally barred under state law. *See Gray v. Netherland* 518 U.S. 152, 161-162 (1996). "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Id.* (citations omitted).

 "Cause" for procedural default exists, for example, when counsel has been constitutionally ineffective or when an objective, external impediment prevented counsel from

complying with the state's procedural rule.  *Noel v. Norris,* 194 F. Supp. 2d 893, 904 (E.D. Ark. 2002)(citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  "To demonstrate prejudice, a petitioner must show 'not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions . . . [such that he] was denied fundamental fairness at trial.'"  *Id.* (quoting  *Murray*, 477 U.S. at 494).

The Arkansas Supreme Court has declined to recall the final mandate affirming a death sentence in order to consider mental retardation, post-*Atkins* claims.  *See Coulter v. State*, 365 Ark. 262 (2006)(citing *Engram v. State*, 360 Ark. 140 (2004), *Echols v. State*, 360 Ark. 332 (2005)).   Jackson has no remedy currently available in state court, and his *Atkins* claim is procedurally barred in state court and procedurally defaulted for the purpose of federal habeas review.  Jackson argues, however, that the Court should excuse his default because,  prior to the Supreme Court's decision in *Atkins*, his claim was so novel that it was not reasonably available to him.   The Court disagrees.

The Arkansas Supreme Court has held that the rule in *Atkins* merely reaffirmed Arkansas' statutory prohibition against executing the mentally retarded, enacted in 1993, which provides that no defendant who is mentally retarded at the time of committing capital murder shall be sentenced to death.  *See Anderson v. State,* 357 Ark. 180, 216 (2004)(citing Ark. Code. Ann. § 5-4-618(b)).  Arkansas Code § 5-4-618 establishes a rebutable presumption of mental retardation when a defendant has an intelligent quotient of sixty-five or below, *see* Ark. Code Ann. § 5-4-618(a)(2), and it places the burden on the defendant to prove mental retardation by a preponderance of the evidence.  *See* Ark. Code Ann. § 5-4-618(c).  "A defendant who wishes to

invoke this provision must do so by written motion prior to trial.  If such motion is filed, the trial court must determine prior to trial whether the defendant is in fact mentally retarded." *Rankin v. State,* 329 Ark. 379, 390, 948 S.W.2d 397, 402 - 403 (1997)(citing Ark. Code Ann. §§ 5-4-618(d)(1), (d)(2)).

Although the Supreme Court's decision in *Atkins* came after Jackson's trial, the legal tools needed to construct a claim that mental retardation rendered him ineligible for the death penalty were reasonably available to him.  *See Frizzell v. Hopkins,* 87 F.3d 1019, 1021 (8th Cir. 1996)(citations omitted)("If the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier.").   Jackson could have invoked the procedure available under Arkansas Code § 5-4-618.  Furthermore, even though *Atkins* was decided after  a jury sentenced him to death, "[t]he parameters of such a claim have been available at least since the Supreme Court's 1989 decision in *Penry v. Lynaugh,* 492 U.S. 302, rejecting the claim that the Eighth Amendment categorically prohibits the execution of the mentally retarded. [Jackson] was not precluded from pressing the view that *Penry* was wrongly decided and that the Eighth Amendment prohibits the execution of the mentally retarded."  *Wooten v. Norris,* 2006 WL 2686925, *19 (E.D. Ark. Sept. 19, 2006).

The Court concludes that Jackson has failed to show cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice.

## IV.

For the reasons stated, the Court finds that Jackson's petition for writ of habeas corpus should be, and it is hereby, DENIED in its entirety and that Jackson's motion (docket entry #15)

for reconsideration of the order precluding evidence of mental retardation should be, and it is hereby, DENIED.[5]  Pursuant to the judgment entered together with this order, the petition is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 4TH DAY OF JANUARY, 2007.

<u>/s/Susan Webber Wright</u>

UNITED STATES DISTRICT JUDGE

---

[5]Under the AEDPA, the Court's power to conduct an evidentiary hearing is sharply limited.  Title 28 U.S.C. § 2254(e)(2)(B), provides that if a petitioner has failed to develop the factual basis of a claim in state court proceedings, the federal habeas court shall not hold an evidentiary hearing on the claim unless, among other criteria, it is shown that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.  Because Ark. Code Ann. § 5-4-618 was in effect during Jackson's state court proceedings, he had opportunity to develop the factual basis for his *Atkins* claim, but he failed to do so.  Furthermore, Jackson has failed to show that the facts underlying his *Atkins* claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have imposed the death penalty.