<u>**THIS IS A DEATH PENALTY CASE**</u>

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ALVIN BERNAL JACKSONPLAINTIFF/PETITIONER

VS.5: 03-CV-00405 SWW

LARRY NORRIS, Director,
Arkansas Department of CorrectionDEFENDANT/RESPONDENT

<u>MOTION FOR CERTIFICATE OF APPEALABILITY</u>

Comes the Petitioner, Alvin Bernal Jackson, through his attorney, Jeff Rosenzweig, and for his Motion for Certificate of Appealability states:

1. Alvin Jackson, under sentence for death, desires to appeal to the Court of Appeals for the Eighth Circuit the decision of the District Court on January 6, 2009 denying and dismissing his habeas corpus petition.

2. Pursuant to provisions of 28 U.S.C. § 2253, Jackson seeks issuance of a certificate of appealability on the remaining point in his habeas corpus petition: That he is retarded and that his execution would violate the Eighth Amendment and *Atkins v. Virginia*, 536 U.S. 304 (2002)   The other issues, such as right to testing, are subsidiary to and emanate from the Atkins issue.   He asserts that he has made a

1

substantial showing of the denial of constitutional right. Under the rule of *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029 (2003), Jackson satisfies this requirement for a certificate of appealability if he demonstrates that jurists of reason could disagree with the district court's resolution of his case **or** that the issues presented were adequate to deserve encouragement to proceed further.

    3. Jackson was convicted of capital murder in the killing of correctional officer Scott Grimes of the Arkansas Department of Correction. He was sentenced to death. At the time of the homicide, Jackson was serving a sentence of life imprisonment without parole in another capital murder case.

    4. Jackson's original habeas petition had been denied in full by the District Court. On appeal, the Court of Appeals remanded the *Atkins* mental retardation claim to the District Court essentially based upon the Court of Appeals holding in *Simpson v. Norris*, 490 F.3d 1029 (8th Cir. 2007).

    5. On remand, the District Court denied relief based upon the pleadings, transcripts and exhibits—with neither a hearing nor a grant of funds for testing as to Jackson's condition.

    6. Jackson submits that the nature of the *Atkins* protections and the evidence in the record entitles him to a hearing and the tools (testing, discovery etc) with which to make his record.

7. In its order, the District Court recited evidence that led it to believe that Jackson is not retarded. However, Jackson had adduced evidence supporting the contention that he is indeed retarded, and in fact the Court discussed those records in its opinion. This was testimony from his original 1990 capital murder trial, which was before the enactment of Ark. Code Ann.§ 5-4-618. Those transcripts rely in part on other records, including those introduced in his trial for killing Officer Grimes:

**Dr. Kohler**.

8. Dr. Patricia Kohler (Ex 1, particularly pp 55-64, using the court reporter's pagination), then the director of the Division of Special Education of the Little Rock School District, who explained from the records *inter alia* that at almost seven years of age Jackson was referred for analysis because of poor schoolwork, emotional outcries and disruptive behavior. He was tested at the borderline range of mental ability. In 1978 he was referred to Elizabeth Mitchell Childrens Center for evaluation. That institution found that he was "unable to function physically or emotionally in a classroom setting at the present time." His verbal IQ was 60, his performance IQ was 90, rendering his full scale IQ as 70. The thirty point discrepancy indicated some "organicity as well as the severeness of his learning problems." She noted that when Jackson was eight years old, the school principal wrote to his mother:

> It will be necessary for you to keep Alvin out of school until something is worked out about his further education. It is almost impossible to get him into or keep him in a classroom. He wanders over the building upsetting furniture, yelling into other classrooms, and hitting or kicking anyone who is within reach. Yesterday he kicked a supervising aide bruising her leg. Today he has choked two children and kicked or bit at a number of others. Last week he announced that he was going to walk home and dashed out of the building. He did not leave, but there is no assurance that he will not leave the next time.

9. When Jackson was eleven, in 1982, he was again tested and received a mental age of seven years eight months, an IQ of 70 and classification of very slow learner or poor receptive language development. A 23 point discrepancy at that time between his verbal and performance scores rendered the full scale score irrelevant. He was deemed to have mental retardation.

10. In 1983 at age 12 he was again evaluated and was placed on Ritalin; the medication was found to be helpful but the dosage level was apparently insufficient to control his hyperactivity. His academic skills were at the second and third grade levels. In December of that year he was placed in a home schooling program.

11. In 1986 he was again evaluated. It was found, inter alia, that:

> There is some difficulty in the visual motor area and expressive and receptive language skills, behavioral concerns are significant...

**Dr. Clements**

12. Dr. Sam Clements, a child and adolescent psychiatrist at the University of Arkansas, testified at length about ADHD. *Inter alia*, he testified that it is a mental disorder that first begins in childhood and can continue through a lifetime, that the more severe forms influence almost everything a person does, that some persons afflicted with it exhibit antisocial behavior as they mature, and that if they have borderline mental retardation it makes their lives even more difficult. He testified that the researchers in the field felt that it is some kind of organic condition or brain dysfunction that the person simply cannot help.

**Dr. Archer**

13. Dr. Lee Archer, who examined Jackson at around age 18 and had examined the records as well, *inter alia* agreed with the diagnosis of borderline mental retardation. (p. 97)

**Other exhibits**

14. Also attached in the pleadings were various exhibits referred to in their testimony, and which are in the record. They were Ex. 4, the report of Bill Johnson in 1978; Ex. 5, the report of Pat Youngdahl in 1978; Ex. 6, the report of Dr. Chalhub in 1978; and Ex. 7, the report of Dr. Ronald Johnson in 1984.

15. Thus, there certainly is enough in these records to make it a disputed material question of fact that Jackson had, as a youth, significantly subaverage mental abilities, adaptive behavior problems and, obviously, these manifested themselves before he was 18. This certainly meets the COA criteria that jurists of reason could disagree with the district court's resolution of the case or that the issues presented are adequate to deserve encouragement to proceed further.

16. The State's assertion that Jackson is not retarded was based largely upon two things: (i) One test in 1996, pre- *Atkins*, and without much reference— if any at all— to the extensive social history going back to early childhood; and (ii) that Jackson did not seem retarded when he testified in another case. The reference in his 1996 forensic examination (Ex. 8) to having scored a 92 is vitiated by the fact that the test was not administered by the forensic examiners or anyone working for them, but was merely a report that the Department of Correction had administered a "Beta" test to him. "Beta" is a quick and dirty test. See *Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007), acknowledging that Beta is a screening device, not a full-blown test. Those are weak reeds upon which to base a conclusion that Jackson is not retarded, certainly without current testing and a hearing.

17. The District Court's opinion rests substantially on the transcript of Jackson's court appearance and statement to the police and that he did not seem, on

that paper record, to be retarded. The Supreme Court has identified mental retardation as an affliction barring execution under the Eighth Amendment. Jackson has adduced sufficient evidence to show that he is retarded, and is at least entitled to have a hearing on the point. A paper record is no substitute for an in-person appearance before the tribunal where the Court can determine for itself the strength or weakness of those impressions derived from paper.

WHEREFORE, Jackson prays that the Court grant the certificate of appealability.

ALVIN BERNAL JACKSON

/s/ Jeff Rosenzweig

_____
JEFF ROSENZWEIG
Ark. Bar No. 77115
300 Spring St. Suite 310
Little Rock, AR 72201
(501) 372-5247
jrosenzweig@att.net
*Attorney for Petitioner*

CERTIFICATE OF SERVICE

I hereby certify I have served a copy of the foregoing to Pamela Rumpz, Assistant Attorney General, 322 Center St., Little Rock, AR 72201 this 16th day of January, 2009, by electronic means.

/s/ Jeff Rosenzweig

_____
JEFF ROSENZWEIG

7